IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| RANDALL ADKINS, )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>CAROLYN. W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>    Defendant. ) | CIVIL ACTION NO. 3:14-27920 |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Orders entered November 14, 2014, and January 5, 2016 (Document Nos. 4 and 12.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 10 and 11.)

The Plaintiff, Randall Adkins (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on January 11, 2013, and January 27, 2013, respectively (protective filing dates), alleging disability as of April 27, 2010, due to AC separation of the left shoulder, right back; lower back injury; AC separation on left and right shoulders; depression; high blood pressure; and arthritis.[1] (Tr. at 11, 56, 67, 199-200, 201-05, 215, 218.) The claims were denied initially and upon reconsideration. (Tr. at 56-66, 67-77, 78-79, 80-91, 92-103, 104-05, 106-08, 111-13, 123-25, 130-32, 134-36.) On December 3, 2013, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 137-38.) A hearing was held on August 4, 2014, before the Honorable Maria Hodges.

---

[1] Claimant reported in his Disability Report – Appeal, dated June 10, 2013, that his depression, anxiety, and back pain had worsened, which resulted in him being unable to walk long periods and lift anything due to the AC in his

(Tr. at 28-55.)  By decision dated August 19, 2014, the ALJ issued a partially favorable decision and found that Claimant was not disabled prior to March 17, 2014, but became disabled on that date and continued to be disabled through the date of the decision. (Tr. at 11-21) The ALJ's decision became the final decision of the Commissioner on September 16, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on November 12, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v.

---

left and right shoulder. (Tr. at 262.)

Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, April 27, 2010. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "degenerative disc disease of the cervical and lumbar spine, chronic obstructive pulmonary disease, depressive disorder not otherwise specified, anxiety disorder not otherwise specified, and opioid dependence," which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 14, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for light work, as follows:

> [S]ince April 27, 2010, the [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) except he can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can occasionally climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to vibration, temperature extremes, humidity, wetness, and pulmonary irritants. He is able to perform simple tasks and occasionally interact with others.

(Tr. at 15, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 19, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ also concluded that prior to March 17, 2014, the date Claimant's age category changed from an individual closely approaching advanced age to an individual of advanced age, Claimant could perform jobs such as a product inspector, price marker,

and small parts assembler, at the unskilled, light level of exertion. (Tr. at 19-20, Finding No. 10.) On this basis, benefits were denied prior to March 17, 2014. (Tr. at 27, Finding No. 11.) Beginning March 17, 2014, the ALJ found that there were no jobs that existed in significant numbers in the national economy that Claimant could perform, and found Claimant disabled as of that date. (Tr. at 20, Finding No. 12.) Prior to March 17, 2014, the ALJ found that Claimant was not entitled to benefits. (Id.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined substantial evidence as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 18, 1958, and was 56 years old at the time of the administrative hearing, on August 4, 2014. (Tr. at 19, 199, 201.) The ALJ found that Claimant had a tenth grade, or limited education and was able to communicate in English. (Tr. at 19, 217, 219.) In the past, he

worked as a loader operator and coal truck driver. (Tr. at 19, 219, 231-38.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

*Evidence Prior to the Alleged Onset Date*:

On February 1, 2001, an MRI of Claimant's cervical spine revealed left lateral disc herniation at C5-6. (Tr. at 517.) It was noted in 2006 and 2007, that Claimant had separation of the bilateral shoulder AC joints. (Tr. at 355, 368.)

*Valley Health System*:

On January 17, 2013, Claimant sought treatment at Valley Health System for complaints of bilateral hand numbness, elevated blood pressure, left shoulder and neck pain, and lower back pain with radiation to the right hip and down the right leg. (Tr. at 389.) He was assessed with pain syndrome, for which he was prescribed Celebrex, and carpal tunnel syndrome ("CTS"), for which the use of braces was discussed. (Id.) At a follow-up examination, Claimant reported that he never took the Celebrex because his insurance did not cover it. (Tr. at 388.) He also reported that shoulder pain disrupted his sleep. (Id.) He was prescribed Contin and Lisinopril for high blood pressure and Mobic for joint pain. (Id.)

*Prestera Center*:

Claimant initiated treatment at Prestera Center on January 31, 2013. (Tr. at 398-402.) Nikki Clatos, M.A., noted that Claimant recently had been discharged from inpatient hospitalization through another behavioral health provider and needed an assessment to determine unresolved symptoms and functional impairments. (Tr. at 398.) Claimant reported symptoms of depression, anxiety, and mild suicidal ideation. (Id.) He reported anxiety and depression problems with a three year history, that had worsened. (Id.) His symptoms included depression with withdrawal, irritability,

5

low energy, feelings of helplessness and hopelessness, loss of interest in previously enjoyed activities, mild suicidal ideation without plan, intent or history of suicidal attempts, insomnia with difficulty falling asleep and frequent awakenings, poor concentration with distractibility, anxiety with excessive worry and muscle tension, low self-esteem, and periodic use of non-prescribed Suboxone. (Id.) Claimant reported having used opiates for thirty years for pain. (Tr. at 399.)

On mental status exam, Ms. Clatos noted that Claimant had a normal appearance, speech, thought content, recall memory, and psychomotor activity, and was oriented to person, place, situation, and time. (Tr. at 400-01.) Socially, she noted that Claimant was inhibited. (Id.) She noted that his affect was blunted, he maintained appropriate eye contact, had good appetite, and admitted to suicidal ideation. (Tr. at 401.) Ms. Clatos diagnosed depressive disorder and anxiety state NOS, and assessed a GAF of 50.[2] (Tr. at 402.)

Claimant underwent individual therapy with Charles Patrick, M.A., from February 4, 2013, through January 6, 2014. (Tr. at 403-06, 443-45, 620.)

On March 4, 2013, Dr. Mohit Bhardwaj, M.D., conducted a psychiatric evaluation, at which time Dr. Bhardwaj observed that Claimant was appropriate and cooperative and had normal motor activity and speech, an appropriate mood, goal directed thought processes and appropriate thought content, intact memory and concentration, fair judgment, and was alert with no suicidal or homicidal thoughts or ideations or hallucinations. (Tr. at 407-08.) Dr. Bhardwaj diagnosed opioid dependence and drug induced mood disorder and assessed a GAF of 50. (Tr. at 409.)

On March 19, 2013, Dr. Bhardwaj noted Claimant was appropriate and cooperative, maintained normal eye contact, presented with normal speech and goal directed thought processes,

---

[2] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 41-50 indicates that the person has some serious symptoms "(e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting)" or "any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994)

had appropriate thought content, and had low mood and a constricted affect. (Tr. at 422.) Dr. Bhardwaj continued his diagnoses. (Tr. at 423-24.) Claimant's mental status exam and diagnoses remained unchanged on April 23 and June 10, 2013. (Tr. at 446-49, 450-53.)

On July 15, 2013, Dr. Bhardwaj completed a form Mental Status Statement of Ability to Do Work-Related Activities (Mental), on which he opined that Claimant's mental impairment and symptoms were "quite severe" and that his prognosis was poor. (Tr. at 460-65.) Dr. Bhardwaj assessed marked limitations in his ability to interact appropriately with supervisors and indicated that his generalized persistent anxiety was marked. (Tr. at 461.) He also assessed moderate limitations in Claimant's ability to understand, remember, and carry out complex instructions; make judgments on complex work-related decisions; interact appropriately with the public and co-workers; and respond appropriately to usual work situations and to change in a routine work setting. (Id.) Dr. Bhardwaj also assessed moderate signs and symptoms, including pervasive loss of interest in almost all activities, decreased energy, blunt or inappropriate affect, feelings of guilt or worthlessness, mood disturbance, difficulty thinking or concentrating, persistent disturbances of mood or affect, apprehensive expectation, and sleep disturbance. (Tr. at 461-62.) Mild limitations were assessed in his ability to understand, remember, and carry out simple instructions and make judgments on simple work-related decisions. (Tr. at 461.) Dr. Bhardwaj further assessed mild symptoms of appetite disturbance with weight change, impairment in impulse control, poverty of content of speech, psychomotor agitation or retardation, and psychological dependence, passively or aggressively, easily distracted, and recurrent and severe panic attacks. (Tr. at 461-62.) Dr. Bhardwaj indicated that Claimant's impairments would "change significantly" if he abstained from alcohol and/or substance abuse. (Tr. at 463.)

On September 3, 2013, Claimant underwent treatment at the Prestera Crisis Residential Unit for acute depressive symptoms and detox of opiate dependence. (Tr. at 529.) Claimant admitted that

he bought Suboxone off the streets five to six times a week. (Id.) He further admitted that he had used some type of opiate since 1984, when he was prescribed them for an injury. (Id.) He was assessed a GAF of 45. (Tr. at 533.) Claimant was discharged from the program on September 10, 2013, having met the goals and objectives of the program. (Tr. at 606.)

Dr. Bhardwaj noted on October 7, 2013, that Claimant was appropriate and well-groomed, maintained normal eye contact, was cooperative, and had normal motor activity and speech. (Tr. at 608.) Claimant had an appropriate affect and a fine mood, goal-directed thought processes, appropriate thought content, and was alert. (Tr. at 608-09.) Dr. Bhardwaj decreased Claimant's GAF to 45. (Tr. at 610.) Claimant's mental status exam remained unchanged on October 29, 2013, with the exception of an appropriate and constricted affect. (Tr. at 612-13.) On December 9, 2013, Claimant's mood was irritable and his affect was constricted, but the remainder of the mental status exam remained unchanged. (Tr. at 616-17.)

On January 2, 2014, Mr. Patrick noted that Claimant had significant impairment in daily activities, relationships, personal safety, and school/work. (Tr. at 574.) He also noted that Claimant was withdrawn and had poor concentration and a restricted affect, but otherwise had normal speech, thought content, and memory. (Tr. at 577-78.) Mr. Patrick assessed a GAF of 50. (Tr. at 578.) Dr. Bhardwaj noted on January 6, 2014, that Claimant had a low mood and constricted affect. (Tr. at 621.) Claimant's mental status exam otherwise essentially was normal, and Dr. Bhardwaj continued to assess a GAF of 45. (Tr. at 621-23.) Claimant's mental status exam remained unchanged on February 17, 2014, and March17, 2014, and Dr. Bhardwaj assessed an increased GAF of 50, on March 17, 2014. (Tr. at 625-28, 629-632.)

*David L. Winkle, M.D.*:

On May 16, 2013, Dr. Winkle conducted a consultative examination at the request of the State agency. (Tr. at 436-42.) Claimant reported shoulder problems, a lower back injury from prior

motor vehicle accidents, high blood pressure, arthritis, and depression. (Tr. at 436.) On physical exam, Dr. Winkle observed that Claimant presented with tenderness to both shoulders with prominence of the AC joints on both sides. (Tr. at 438.) His wrists also were tender, with negative Phalen and Tinel signs and no atrophy noted. (Id.) Claimant had normal grip, strength, and dexterity; and his fine manipulation was normal. (Id.) He presented with tenderness in the right lumbar area with some evidence of spasm, but had negative straight leg raising testing. (Id.) Mental status exam was normal, with appropriate mood and affect, intact sensation, and Claimant was able to knee squat, tandem walk, and walk on his heels and toes. (Id.) Dr. Winkle assessed degenerative disease of the lumbosacral spine. (Id.) He opined however, that due to Claimant's shoulder problems, he would have difficulty working above shoulder level. (Id.) Due to his hand problems, Dr. Winkle further opined that repetitive gripping and grasping may be difficult for Claimant, as well as heavy lifting due to back problems. (Tr. at 438-39.) He opined that Claimant was capable of lifting and handling 20 pounds occasionally and ten pounds frequently, but could stand and walk at least six hours in an eight-hour workday because he did not have issues with mobility. (Tr. at 439.)

The x-rays of Claimant's lumbosacral spine revealed normal alignment of the bony structures within the lumbosacral spine, slight narrowing of the L5-S1 interspace, formation of Schmorl's nodes at L2-2, L3-4, and L4-5, and the presence of phleboliths within the pelvic areas. (Tr. at 438.) The x-rays of Claimant's shoulders on October 30, 2013, demonstrated normal joint alignment of the right shoulder, a healed fracture of the clavicle, but no signs of sclerotic changes in the AC joint or in the glenohumeral joint. (Tr. at 466-67.) The left shoulder revealed evidence of the humeral head riding up and out of the glenohumeral joint, no obvious fractures or deformities, and signs of possible rotator cuff tendinopathy versus tear. (Id.)

*KDMS Cardiology*:

On January 30, 2014, Dr. Richard Ansinelli, M.D., a cardiologist, examined Claimant for his

complaints of dizziness, light-headedness, and a history of prolonged chest pressure and burning in the neck and shoulders with shortness of breath and diaphoresis. (Tr. at 470.) On physical examination, Claimant had normal range of motion testing and a normal mood and affect. (Tr. at 472.) Cardiovascular exam essentially was normal. (Id.) He was assessed with an abnormal cardiovascular stress test and hypertension. (Id.) Cardiac catheterization was recommended, which he underwent on February 6, 2014. (Tr. at 472 474, 497-98.) He was diagnosed with very minor atherosclerosis, with no hemodynamically significant lesions. (Tr. at 474.)

*Louisa Medical Clinic*:

On January 17, 2014, Claimant presented to Louisa Medical Clinic as a new patient, with a history of bipolar disorder, anxiety, depression, and drug abuse and reports of generalized joint pain, high blood pressure, and insomnia. (Tr. at 490-92.) Claimant reported that Naprosyn recently had helped his symptoms. (Tr. at 490.) Physical exam revealed 5/5 muscle strength and normal deep tendon reflexes in all extremities. (Tr. at 491-92.) Dr. Chad A. McCreary, M.D., diagnosed hypertension, anxiety, bipolar disorder, osteoarthritis, tobacco abuse, and chest pain, for which he prescribed Zestoretic for hypertension, Naproxen for osteoarthritis, as well as Seroquel, Celexa, and Amitriptyline. (Tr. at 492.)

Stress testing on January 23, 2014, revealed an area of anterior septal and proximal anterior ischemia, with normal ejection fraction. (Tr. at 500-01.) Dr. Ansinelli noted that it was a moderate risk stress test. (Tr. at 501.)

Claimant returned to Dr. McCreary on February 18, 2014, and reported that he had "done okay" but experienced some dizziness and vertigo, which had been sporadic but more frequent. (Tr. at 487.) He also reported tunnel vision. (Id.) Physical exam was unchanged and Dr. McCreary opined that Claimant's hypertension, bipolar disorder, and osteoarthritis were stable. (Tr. at 488.) He ordered an MRI of the head regarding the vertigo and prescribed Antivert. (Tr. at 489.)

A bilateral carotid duplex on February 26, 2014, revealed mild to moderate bilateral internal carotid artery stenosis in range of 30 to 49% in diameter with calcified hard plaque in both proximal internal carotid arteries. (Tr. at 499.) It also was noted that both vertebral arteries were patent with antegrade flow. (Id.)

*State Agency Medical Consultant Opinions*:

*Dr. A. Rafael Gomez, M.D.*:

On June 3, 2013, Dr. Gomez, a State agency reviewing medical consultant, opined that Claimant could lift occasionally 50 pounds and frequently 25 pounds; sit, stand, or walk for about six hours in an eight-hour workday; frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; occasionally climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to vibration. (Tr. at 62-64, 73-75.) On November 8, 2013, Dr. Fulvio Franyutti, M.D., another State agency reviewing medical consultant, reviewed the assessment of Dr. Gomez and affirmed it as written. (Tr. at 87-89, 99-101.)

On September 26, 2013, Dr. Jim Capage, a State agency reviewing medical consultant, opined that Claimant's substance abuse disorder resulted in no restriction of daily activities or episodes of decompensation of extended duration and mild difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. at 86-87, 98-99.)

*Evidence After the ALJ Found Claimant Disabled on March 17, 2014*:

*Louisa Medical Center*:

On March 18, 2014, Claimant reported that the Antivert had helped some with his symptoms and that the vertigo had improved slightly. (Tr. at 484.) Dr. McCreary noted that Claimant's bipolar disorder and anxiety were stable. (Id.) Physical exam remained unchanged. (Tr. at 485.) Dr. McCreary opined that Claimant's vertigo could be an inner ear infection and referred him for evaluation. (Id.) He noted that Claimant's osteoarthritis remained stable and that the carotid artery

stenosis only was mild. (Tr. at 486.) An MRI scan of Claimant's brain on April 8, 2014, was normal. (Tr. at 493-94.)

*Three Rivers Medical Center*:

On April 26, 2014, Claimant presented to the emergency department with complaints of back and leg pain. (Tr. at 513-14.) On physical exam, it was noted that Claimant had moderate pain in the lumbar area with painful range of motion and muscle spasm in the lumbar area and right lower back. (Tr. at 513.) Straight leg raising testing revealed pain at 30 degrees. (Id.) Dr. Mark Kingston, M.D., assessed that Claimant's condition was an acute exacerbation and discharged him in stable condition. (Tr. at 514.)

*Dr. Greg Chaney, M.D.*:

On July 19, 2014, Dr. Chaney, Claimant's treating physician, noted that Claimant suffered from severe arthritis, high blood pressure, AC separation in both shoulders, low back pain, and COPD. (Tr. at 640.) He opined that Claimant was unstable on his feet and was unable to walk, stand, or sit for any length of time. (Id.) He further opined that Claimant's anxiety made him unable to be in a crowd of people. (Id.) Dr. Chaney therefore, opined that Claimant was "100% disabled." (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to develop the medical evidence regarding his lumbar and cervical pain, hypertension, shoulder pain, anxiety, and depression. (Document No. 10 at 9-10.) Specifically, Claimant asserts that the ALJ failed to develop fully and consider his "extensive complaints of injuries, pain, discomfort, and limitations." (Id. at 9.) He also alleges that the ALJ substituted opinions of his treating physicians for those of non-treating, record reviewing, state physicians. (Id.) Claimant refers only to Dr. Chaney's opinion and asserts that his opinion demonstrated that Claimant was disabled since April 2010. (Id. at 10.) Claimant asserts that the ALJ ignored "numerous medical

findings from 2006 until 2014 that shows [Claimant] suffered from disabling injuries and impairments." (Id.)

In response, the Commissioner asserts that although Claimant alleges that the ALJ ignored medical findings from 2006 until 2014, he failed to cite specific evidence to support his assertion. (Document No. 11 at 11.) The Commissioner asserts that Claimant's argument is not persuasive because evidence prior to the alleged onset date of April 27, 2010, and after March 17, 2014, the date the ALJ found Claimant disabled, including Dr. Chaney's opinion, was outside the relevant period at issue. (Id.) Nevertheless, the Commissioner asserts that the evaluations and opinions of Drs. Winkle, McCreary, Gomez, and Franyutti support the ALJ's decision. (Id. at 12-13.) Regarding Claimant's mental impairments, the Commissioner asserts that treatment notes from Prestera demonstrated that Claimant's mental condition essentially was stable and Dr. Bhardwaj's evaluation revealed that Claimant's mental condition remained stable. (Id. at 13.) Consequently, the Commissioner contends that the ALJ reasonably considered and weighed the relevant medical findings of record. (Id. at 14.)

Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider and evaluate his claims under the combination of impairments theory. (Document No. 10 at 10-11.) Claimant asserts that even a "cursory review of the evidence of record would conclude that the totality of the [C]laimant's medical and mental problems, when combined, totally disable him since at least April 27, 2010." (Id. at 11.) Claimant asserts that he had several severe medical conditions that separately met a Listing level impairment, and therefore, the ALJ should have considered "the combined effect of all [his] medical problems without regard to whether any such condition, if considered separately, or in combination thereof would be sufficiently severe." (Id. at 10-11.)

In response, the Commissioner asserts that Claimant's argument is not persuasive for several reasons. (Document No. 11 at 14-16.) First, the Commissioner asserts that Claimant had the burden

13

of proving that he had an impairment or combination of impairments that met or medically equaled the severity of one of the Commissioner's listed impairments. (Id. at 14.) The Commissioner notes that Claimant failed to identify the Listing he believed the combination of impairments met or medically equaled, but in any event, he did not meet his burden in this regard. (Id.) Second, the Commissioner asserts that Claimant cited only Dr. Chaney's July 2014, letter and accompanying RFC assessment in support of his argument, which as the ALJ determined, were entitled little weight. (Id.) The ALJ properly determined that Dr. Chaney's opinion was inconsistent with the evidence of record that demonstrated that Claimant had a normal gait and muscle strength, and experienced no neurological deficits. (Id. at 15.) Furthermore, Dr. Chaney provided no clinical or laboratory findings to support his opinions and examined Claimant on only one occasion. (Id.) The Commissioner asserts that Dr. Chaney's opinions were based on little more than Claimant's subjective complaints. (Id. at 16.) Accordingly, the Commissioner contends that Claimant's argument that his combined impairments met a Listing level impairment is unsupported by the substantial evidence of record. (Id.)

Analysis.

1. Duty to Develop the Evidence.

Claimant first alleges that the ALJ failed to develop fully the evidence regarding his complaints of injuries, pain, discomfort, and limitations. (Document No. 10 at 9-10.) Although an ALJ does have a responsibility to help develop the evidence, it is Claimant's responsibility to prove to the Commissioner that he is disabled. 20 C.F.R. §§ 404.1512(a), (d); 416.912(a), (d) (2013).[3]

---

[3] In *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986), the Fourth Circuit noted that an ALJ has a "responsibility to help develop the evidence." The Court stated that "[t]his circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely on evidence submitted by the claimant when that evidence is inadequate." *Id.* The Court explained that the ALJ's failure to ask further questions and to demand the production of further evidence about the claimant's arthritis claim, in order to determine if it met the requirements in the listings of impairments, amounted to a neglect of his duty to develop the evidence. *Id.*

Thus, Claimant is responsible for providing medical evidence to the Commissioner that he has an impairment. Id.; §§ 404.1512(c), 416.912(c). Although the ALJ has a duty to develop the record fully and fairly, he is not required to act as Claimant's counsel. Clark v. Shalala, 28 F.3d 828, 83-31 (8th Cir. 1994). It appears that Claimant was represented by counsel in this case throughout the proceedings. Additionally, Claimant had several opportunities to submit additional evidence at the initial and reconsideration stages of his application, and when requesting a hearing before the ALJ.

Claimant fails to indicate what he suspects additional evidence would demonstrate. Although he asserts that the ALJ ignored many medical findings from 2006 until 2014, that demonstrated that he suffered from disabling injuries and impairments, he cites to no specific evidence to support his assertion. He cited to the medical opinion of his treating physician, Dr. Chaney, but his opinion was

---

It is nevertheless Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a) (2013) (stating that "in general, you have to prove to us that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).") Thus, the claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. *Id.* §§ 404.1512(c), 416.912(c). The Regulations provide that: "You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." §§ 404.1512 (c); 416.912(c)(2014). In *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the Supreme Court noted:

> The severity regulation does not change the settled allocation of burdens of proof in disability proceedings. It is true . . . that the Secretary bears the burden of proof at step five . . . [b]ut the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step. The claimant first must bear the burden . . . of showing that . . . he has a medically severe impairment or combination of impairments . . . . If the process ends at step two, the burden of proof never shifts to the Secretary. . . . It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.

*Bowen v. Yuckert*, 482 U.S. at 146, n. 5; 107 S.Ct. at 2294, n. 5 (1987). Thus, although the ALJ has a duty to develop the record fully and fairly, he is not required to act as the claimant's counsel. *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a *prima facie* entitlement to benefits. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, Claimant "bears the risk of non-persuasion." *Seacrist v. Weinberger*, 538 F.2d 1054, 1056 (4th Cir. 1976).

rendered on July 19, 2014, which was beyond the relevant time period. Moreover, the ALJ accorded Dr. Chaney's opinion little weight because his opinion was of one reserved to the Commissioner and was inconsistent with the overall medical record. (Tr. at 18.) As noted above, and contrary to Dr. Chaney's opinion, the medical evidence revealed that Claimant had a normal gait and motor strength, and had no neurological deficits. (Tr. at 18, 438-39, 487-88, 491-92, 500-01.) Furthermore, Dr. Conley's opinion was inconsistent with the opinions of the State agency medical consultants, who assessed abilities to perform light and medium exertional level work. (Tr. at 19.) Respecting Claimant's mental impairments, Dr. Bhardwaj's treatment notes and evaluation demonstrated that Claimant's conditions remained stable, which were supported by the Prestera treatment notes. The undersigned notes that Dr. Chaney failed to identify any medical evidence that supported his opinion. Accordingly, in the absence of Claimant's identification of further evidence regarding his impairments, the undersigned finds that the ALJ did not breach his "duty to investigate the facts and develop the arguments both for and against granting benefits." Sims v. Apfel, 530 U.S. 103, 111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000). The evidence of record regarding Claimant's conditions was sufficient from which the ALJ could determine that prior to March 17, 2014, Claimant's impairments were not as severe as he alleged. As such, the ALJ did not err in failing to develop further the evidence regarding Claimant's impairments or in assessing the opinions of Dr. Chaney and the State agency medical consultants.

2. Combination of Impairments.

Claimant also alleges that the ALJ erred in failing to consider his impairments in combination. (Document No. 10 at 10-11.) A finding of disability is warranted at step three of the sequential analysis when a claimant's impairments meet or medically equal a Listing level impairment. The Listing of Impairments describes, for each of the major body systems, impairments that are considered severe enough to prevent an adult from doing any gainful

activity," regardless of age, education or work experience, see Sullivan v. Zebley, 493 U.S. 521, 532, 110 S.Ct. 885, 892, 107 L.Ed.2d 967 (1990); 20 C.F.R § 416.925(a) (2013). The medical criteria that defines the Listed impairment were set at a higher level of severity than that required to meet the statutory standard of disability because the Listing were designed to operate "as a presumption of disability that makes further inquiry unnecessary," regardless of vocational background. Id. at 532. For a claimant to show that his impairment or combination of impairments meets a Listing, the claimant must meet all of the specified medical criteria. Id. at 530. A claimant also may demonstrate that an unlisted impairment, or combination of impairments, equals a listed impairment by showing medical findings equal in severity to all the criteria for the most similar listed impairment. Id.

In the present case, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed impairments. (Tr. at 14-15.) The ALJ specifically considered Claimant's impairments under Listings 1.00 (musculoskeletal), 3.02 (respiratory), and 12.04, 12.06, and 12.09 (mental). (Id.) Although Claimant alleges that the ALJ failed to consider his impairments in combination, he fails to identify which Listing the ALJ did not consider. He again cites to Dr. Chaney's opinion, but as discussed above, the ALJ properly gave his opinion little weight and his opinion was rendered beyond the relevant period. The ALJ considered and accounted for Claimant's various impairments in determining Claimant's residual functional capacity. Accordingly, the undersigned finds that Claimant's argument is without merit and that the ALJ appropriately considered and discussed each of Claimant's impairments individually, but concluded that their combined effects were not disabling.

Upon review of the evidence of record and the ALJ's decision, the undersigned finds that the ALJ's consideration of Claimant's impairments is consistent with all applicable standards and Regulations, and her conclusions are supported by substantial evidence. The undersigned further finds that Claimant's arguments therefore, are without merit.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such

objections shall be served on opposing parties, Chief Judge Chambers, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 11, 2016.

_____
Omar J. Aboulhosn
United States Magistrate Judge